MICHAEL BRENNAN, SPECIAL ADMINISTRATOR, v. EDWIN PARDRIDGE.

| 67 | 449 |
| e121 | 297 |
| 121 | 421 |

[See 64 Mich. 575.]

*Purchase of goods after death of owner—Executor de son tort—Individual doing business under firm name—Trover.*

1. On the facts stated in the opinion the judgment below is affirmed, SHERWOOD, J., holding:

> *a*—A purchaser of goods at an auction sale held on the day of the death of the owner, who was doing business under a *firm* name, but who had no partner, which goods were not set apart nor delivered to the purchaser, who a day or two afterwards purchased *other* goods from the clerks of said deceased, which were delivered to the vendee, who paid for them by check to the bookkeeper of the deceased, who turned it over to his widow, is liable to the special administrator of the estate of said deceased for the value of said goods, including those held for sale on commission, the owners having proved claims therefor against the estate.
>
> *b*—In the absence of a prohibitive statute, the use of a name or an abbreviation to do business under, other than that of the individual, raises no *necessary* presumption that he has a partner, or that such title includes more than one person.

2. CHAMPLIN and MORSE, JJ., concurred in affirming the judgment.

Error to Wayne.  (Speed, J.)   Argued October 25, 1887. Decided November 3, 1887.

---

Trover. Defendant brings error. Affirmed. The facts are stated in the opinion, and in 64 Mich. 575.

*George W. Radford*, for appellant.

*Brennan & Donnelly* and *James T. Keena*, for plaintiff.

SHERWOOD, J.  The deceased, in his life-time, carried on the auction and commission business in the city of Detroit, first, under the name of Wardell & Walsh, and, after Wardell retired, Walsh took a special partner, named Jennings, and the business was then conducted under the name of Thomas Walsh & Co.  Jennings died, and after his death Walsh continued the business alone under the same name.

The defendant resided in Chicago, and did business there, and carried on a branch store in Detroit under the name of Pardridge & Co., which was managed .by Mr. Nye and Miss Randall.

Walsh died on the evening of September 16, 1885.

On the day of Walsh's death an auction sale of property at his store was held, and the defendant, Pardridge's, agent attended and bid off quite a large quantity of goods, but they were neither set apart nor delivered to him.

A day or two after Walsh's death the defendant went to the store of Walsh, and bought of the clerks goods to the amount $3,039.96, which were all delivered to defendant on the nineteenth day of September, and paid for on the twenty-first following, by check given to the book-keeper who had been in Walsh's employ, and was in the store at the time doing business, and the book-keeper turned over the money to the widow of Mr. Walsh.  Thomas Walsh's estate was insolvent, and never received the money for the goods, or any part of it.

The plaintiff, after his appointment as special administrator, endeavored to obtain the money of the widow, for use of the estate, but she declined payment.  Failing to obtain

the money for the goods, and the auction sale not having been completed, the administrator saw the defendant, Pardridge, and made a demand upon him for the goods, which was refused, and the plaintiff then brought this suit in trover.

The defendant pleaded the general issue to the plaintiff's declaration, and gave notice therewith that he would show—

1. That Walsh, in his life-time, was not the owner or in possession of the goods in question.

2. That he bought the goods in good faith at the store of Walsh, and paid therefor, supposing he was buying them of the surviving partner of Walsh, and was without knowledge to the contrary, and that Walsh did business under a sign and name which would represent a firm, and that the goods were receipted to him in the name of Thomas Walsh & Co.

The trial of the cause was had in the Wayne circuit before Judge Speed, who at the close of the testimony, directed a verdict for the plaintiff, and the defendant brings error. A careful inspection of the record impels us to affirm this judgment.

The errors assigned are upon the ruling of the court as to the admission of testimony, and the refusals of the court to give the defendant's requests.

The first question upon this record is, did Thomas Walsh at the time of his death, or at the time the goods were purchased, have a partner? This is placed beyond question upon the record. The party who was his principal clerk, and had been for many years, testified that Walsh had no partner, and this testimony is not disputed. That fact must be regarded as settled in the negative, and *prima facie* should dispose of the case.

But the defendant claims that Mr. Walsh did business in such way as led the defendant to believe that he had a partner, and that defendant had a right to act upon such appearances and representations that he had a partner, and did so act.

We have examined the record through for testimony show-

ing any representations made by Thomas Walsh in his life-time, or any made by his agent or clerks, to the effect that, at the time these goods were purchased, or for several months previous thereto, Thomas Walsh was doing business in company with some other person or persons, and have found none.

It is claimed that the defendant was misled upon this subject by the name under which Walsh was doing business; that its purport was that he was doing a company business. The undisputed facts, however, preclude any such conclusion.

In the first place, it is matter of common knowledge that in this State there is no statute preventing the deceased when he was alive from doing business in the manner and under the name he did, and that many persons did business in that way under an assumed name which would be appropriate for a firm; and it appears from the testimony in this case that the defendant himself did business in this manner, and under an assumed name, nearly opposite Walsh's place of business on the other side of the street.

It further appears that, before the transaction was completed out of which the suit arose, the defendant showed knowledge upon the subject, or rather those acting for him in completing the purchase of the goods. The defendant, for the goods he purchased, offered in payment a check made to Thomas Walsh & Co., but this was subsequently changed by the defendant to one running to bearer. This was done on account of the death of Walsh, and at the request of his former clerk, so that there would be no trouble with the bank when the check was presented. Of course no such change in the check would have been necessary if Thomas Walsh had a partner when he died, and this circumstance, undisputed as it is, would seem to be sufficient to put the defendant on his guard as to the real person with whom he was dealing, or sufficient to lead him to make inquiry.

It appears, further, that the defendant had had dealings

several years with Walsh previous to his death; and that after his death, and while the crape was still hanging upon the door of his place of business, which was not over 90 or 100 feet from the defendant's store, the defendant should make purchases at the deceased's place of business to the amount of between $3,000 and $4,000, without knowing from whom he was purchasing, and to whom he could legally make payment, seems almost incredible.

The defendant's manager, Nye, certainly had some knowledge of the situation and of Walsh's death, and ordinary business prudence would require that the defendant and his manager should know with whom they were trading after the death of Walsh.

Every creditor Walsh left was interested in the property and its disposition, and no person could acquire any title thereto, either legal or equitable, except through administration, the estate being insolvent.

In a state where there is no statute prohibiting the use of a name or an abbreviation to do business under other than that of the individual, as in this State, there is no necessary presumption that, when " & Co." is made use of after the dealer's name, he has a partner or partners, or that such title includes more than one person. *Robinson v. Magarity,* 28 Ill. 423.

The plaintiff's right to recover was not limited in this case to the goods actually owned by Walsh, but to those the defendant received of the estate, which were held by Walsh, in his life-time for sale on commission, as well. The owners had proved claims for them against the estate before commissioners. *Cullen v. O'Hara,* 4 Mich. 133; *Emery v. Berry,* 8 Fost. 483; *Campbell v. Tousey,* 7 Cow. 64; *White v. Mann,* 26 Me. 361; *Hubble v. Fogartie,* 3 Rich. 413; *Whit v. Ray,* 4 Ired. 14; *Sharland v. Mildon,* 5 Hare, 469; *Edwards v. Harben,* 2 Term. R. 596.

There being no delivery or acceptance of such of the goods

as defendant claims came to him through the auction sale, he had no more right to detain those from the plaintiff than the others.

We can discover nothing in the record that would enable the defendant to prevail against the claim of the plaintiff, and the direction given by the circuit judge must be sustained.

The judgment is therefore affirmed.

CHAMPLIN, J.   I concur in affirming the judgment.

MORSE, J., concurred with CHAMPLIN, J.

CAMPBELL, C. J., did not sit.