[S. F. No. 2741.   In Bank.—January 4, 1904.]

# CHARLES G. WILLEY, Respondent, v. THE CROCKER-WOOLWORTH NATIONAL BANK, Appellant.

PARTNERSHIP—USE OF FIRM NAME BY INDIVIDUAL.—An individual may conduct his business under any designation he sees fit; and in the absence of any statute of this state forbidding the use of a firm name as a trade-name by an individual, there is no necessary or conclusive presumption that the words "& Co.," used after a dealer's name, import that he has a partner or partners, or that such title includes more than one person.

ID.—REPRESENTATION TO BANK—CREDIT TO INDIVIDUAL—SET-OFF OF PERSONAL NOTE AGAINST FIRM ACCOUNT—SECRET PARTNERS.— Where an individual who commenced business in a firm name stated to the cashier of a bank, with whom he sought to open a deposit account in such name, that he was the sole owner of the business, and never notified the bank to the contrary, and afterward formed a secret partnership with other parties in the same firm name, with the agreement that the names of the other partners should not be disclosed, but should be kept secret, and subsequently borrowed money from the bank in his individual name, the bank is entitled as against such secret partners to set off said note against the deposit account standing in the firm name.

ID.—ESTOPPEL OF DORMANT PARTNER.—Where a dormant partner permits the business world to believe that the ostensible partner is the sole owner of the business, he is estopped from claiming the contrary against those who have in good faith acted upon such appearance, and cannot be heard to insist that a creditor has not the right to set off his debt against such ostensible partner.

ID.—PLEA OF ESTOPPEL—WAIVER OF OBJECTION—APPEAL.—Where there was an attempt in the answer to plead facts constituting an estoppel, and evidence was received under it without objection to the pleadings, and the case was tried on the theory that the plea was sufficiently made, objection to the pleading was waived and cannot be urged upon appeal for the first time.

APPEAL from a judgment of the Superior Court of the City and County of San Francisco.   F. J. Murasky, Judge.

The facts are stated in the opinion of the court.

Henry E. Monroe, Monroe & Cornwall, and Lloyd & Wood, for Appellant.

A corporation cannot enter into a partnership with a pri-

vate person. (*Whittenton Mills* v. *Upton,* 10 Gray, 582;[1] *Gunn* v. *Central R. R. Co.,* 74 Ga. 509; *Central Ry. Co.* v. *Smith,* 76 Ala. 133; *Aurora State Bank* v. *Oliver,* 62 Me. App. 390-393; *Burke* v. *Concord R. R. Co.,* 61 N. H. 160-247; *Culvert* v. *Idaho Stage Co.,* 25 Or. 45; Bates on Partnership, 133; Green's Ultra Vires, 2d ed., p. 423.) There is no presumption that a firm name includes more than one person. (*Robinson* v. *Magarity,* 28 Ill. 423; *Brennan* v. *Partridge,* 67 Mich. 453.) One who is silent when he ought to speak will be prevented from speaking when he ought to keep silent. (Bigelow on Estoppel, 587.) A silent partner cannot prevent a bank from applying money received from the partnership for deposit to a debt of the only ostensible partner. (*Allen* v. *Brown,* 39 Iowa, 330.) The sufficiency of the pleading cannot be objected to for the first time upon appeal. (*Tulley* v. *Tranor,* 53 Cal. 274.)

Crandall & Bull, and H. M. Barstow, for Respondent.

The defendant is estopped from questioning the validity of the partnership which made the deposits. (*French* v. *Donohue,* 29 Minn. 111; *Yancy* v. *Morton,* 94 Cal. 560.) A corporation may be a member of a partnership. (*Catskill Bank* v. *Gray,* 14 Barb. 479; *Butler* v. *American Toy Co.,* 46 Conn. 136; *French* v. *Donohue,* 29 Minn. 111; *Allen* v. *Woonsocket,* 11 R. I. 388.) There is no estoppel of the plaintiff to claim the deposits, for want of the necessary elements of estoppel. (*Boggs* v. *Merced etc. Co.,* 74 Cal. 367; *Barnhart* v. *Fulkerth,* 93 Cal. 497; *Becker* v. *Becker,* 102 Cal. 228; *Murphy* v. *Clayton,* 113 Cal. 153, 160.)

LORIGAN, J.—This is an appeal from a judgment on a bill of exceptions.

Appellant attacks the sufficiency of the evidence to sustain the findings upon which judgment for respondent was entered.

The facts are substantially as follows: One, A. B. Perry, some time in the latter part of 1896 (the record does not disclose the exact date), went to the banking-house of the Tallant Banking Company, in San Francisco, for the purpose of opening a deposit account with said bank in the name of A.

[1] 71 Am. Dec. 681.

B. Perry & Co.   He stated to the cashier of the bank at the time that he was the sole owner of the business of A. B. Perry & Co., and had no partner; that he was going to open up his business in that style, and under the name of A. B. Perry & Co., and run the business that way for the appearance of it; that he preferred to do it in that manner, as he thought it gave him a little strength; that he expected to take a partner in, and when he did so he would not have to make any change.

That, on January 1, 1897, the said A. B. Perry and W. P. Fuller & Co., a corporation, entered into articles of copartnership under the firm name and style of A. B. Perry & Co.; that such articles provided, among other things, that said W. P. Fuller & Co., or its employees, should not be required to give their time or services to the conduct of such business, but that A. B. Perry should give his entire time and attention to it.   The articles further provided for the keeping of books of account, and in that regard specially stipulated that, "said books shall be kept in the name of A. B. Perry & Co., and the name of W. P. Fuller & Co. shall not appear therein, but shall remain and be kept secret and undisclosed by the parties hereto.   The account of W. P. Fuller & Co. in this copartnership shall be kept in the name of 'Private Partner,' and all credits and debits belonging to said W. P. Fuller & Co. as partner, shall be kept in said name."

That, after the formation of such partnership the deposit account stood in the name of said A. B. Perry & Co., with said Tallant Banking Company, and in August, 1897, the said A. B. Perry individually borrowed from the said Tallant Banking Company the sum of sixteen hundred dollars, for which he gave his personal note, payable ninety days after date.   In November, 1898, said Tallant Banking Company transferred to defendant certain of its assets, including the said note, and thereupon defendant assumed certain liabilities of the Tallant Banking Company, including the liability for the deposit to the credit of A. B. Perry & Co.   The said deposit account was thereafter kept by defendant with said A. B. Perry & Co., but said A. B. Perry had no individual deposit with defendant at any time.

When the transfer of the account and note was made from the Tallant Banking Company to the defendant bank, the

cashier of the former informed the officers of the latter of the statements A. B. Perry had made when he first appeared at the bank as to his sole ownership of the business, that he had no partner, and stated the reasons he gave why he wished to conduct the business under the firm name of A. B. Perry & Co.

That neither the Tallant Banking Company, nor the defendant bank ever had any actual notice that A. B. Perry & Co. represented a partnership, or that A. B. Perry had a partner, or that any one other than said A. B. Perry was interested in the business conducted under such name.

That, on February 14, 1899, there was on deposit to the credit of A. B. Perry & Co. with the defendant the sum of $1,720.64, and on that day defendant charged said account with the sum of $1604.94, being the amount due on said note of A. B. Perry. This was done without any request from said A. B. Perry, or A. B. Perry & Co., and solely on account of the fatal illness of said A. B. Perry, reported to the defendant.

Said A. B. Perry having subsequently died, W. P. Fuller & Co., claiming to be the surviving partner of A. B. Perry & Co., demanded the delivery to it by defendant of the entire $1,720.64, and being refused assigned its claim to plaintiff for collection.

The lower court found "that the defendant did not know A. B. Perry to be alone in business under such firm name; that, after January 1, 1897, he did not hold himself out as the sole member of said A. B. Perry & Co., nor, as the sole owner of the business conducted under that name, nor was he after that date so known or considered in the business world."

And found also that "the defendant did not give said A. B. Perry credit, or accept his promissory note because of, or in reliance upon, the fact that A. B. Perry was alone the owner of the deposit account standing in the name of A. B. Perry & Co."

It is insisted by the appellant, that these findings are not supported by the evidence, and we have come to the same conclusion. They are not only not so supported, but the evidence directly shows the contrary.

While the exact date when A. B. Perry opened his account with the Tallant Banking Company is not shown, it is fairly

inferable from the evidence that he had opened it somewhat prior to the agreement of partnership between himself and W. P. Fuller & Co.; that he was then the sole owner of the business, and so declared himself to the cashier of the bank, giving his reason for adopting the name and style of A. B. Perry & Co.

There is not a particle of evidence to show, that from that date, A. B. Perry ever acquainted the Tallant bank, or the defendant bank, that his relation to the business of A. B. Perry & Co., had changed, that he had a partner, or had entered into partnership, or that W. P. Fuller & Co. was in any manner interested in the business.

Neither did W. P. Fuller & Co. at any time until after Perry's death notify either of them of its interest in the business as a partner. Nor is there any evidence showing that even an intimation was conveyed to either banking-house that Perry was not, at all times, the sole owner of the business.

In fact, it would have been a violation of the articles of agreement for A. B. Perry or W. P. Fuller & Co. to have informed anybody that such a partnership existed. The agreement between them expressly provided that their partnership should be kept a secret. The presumption is, that men keep their agreements, and in the case at bar it appears to be the fact that both of them kept theirs, and that A. B. Perry, having in the beginning stated that he was the sole owner of the business without a partner, sedulously thereafter avoided informing either the Tallant bank, or the defendant bank to the contrary. Aside from depositing and checking against his account, he had but few dealings with the officers of either bank, but those he did have tended to confirm their belief in his original declaration that he was the sole owner. To illustrate, in 1898, contemplating a trip east, he called at the Tallant bank, and stated that while east he might make some purchases and want to overdraw his account; to meet such overdrafts he desired to leave blank notes with the bank, giving as a reason therefor, that, while his bookkeeper could sign checks, there was no one who could sign notes for him. The bank declined to receive such notes, and other arrangements were made. When the transfer of the account from the Tallant bank to the defendant bank was made, the identi-

fication signature furnished to the bank by Perry, upon which alone it should honor checks, was that of A. B. Perry & Co., signed by A. B. Perry.

Both these transactions were confirmatory of his original declaration of individual ownership; that he alone could draw checks was equivalent to saying that he alone still owned the business; that there was no one who was authorized to sign notes for him, even to meet the exigencies of the business while he was away, warranted the natural inference that he was solely interested in it, and excluded the idea of his having a partner.

Not only does the whole trend of the evidence tend to show that, as far as the Tallant bank, or the defendant bank is concerned, they knew A. B. Perry as the sole owner of the business represented by the style and name of A. B. Perry & Co., but the plaintiff made no effort to show that any information to the contrary was brought to the attention of either.

The trial court seems to have attached some importance to the fact that the defendant bank, after the transfer to it by the Tallant Banking Company of the account of A. B. Perry & Co., "received its deposits and honored its checks without prosecuting any inquiry as to the membership of such copartnership."

But there was nothing calling for such inquiry. No conclusive presumption arose from the use of the term "& Co.," in connection with A. B. Perry, which imported the existence of a copartnership. It is a matter of common observation that persons do business frequently under what is known as a trade-name, adopted for the purpose of giving them an apparent standing in the business community. This is the idea Perry had in view. He selected it, doubtless, as a trade-name, and because, as he stated to the Tallant bank, he "thought it gave him a little strength."

It does not necessarily follow as a presumption from the use of such a business designation that more than one person is interested in the business, or that any other than the one whose name is given is so interested. The business world looks chiefly to the individual actually mentioned in the business appellation until it discovers or is informed that others are interested in the business with him. There is no law of this

state which prevents the use of a trade-name by an individual, and in the absence of any such prohibition an individual may conduct business under any designation he sees fit. As is stated in *Brennan* v. *Partridge*, 67 Mich. 453, "In a state where there is no statute prohibiting the use of a name or an abbreviation to do business under other than that of the individual, there is no necessary presumption that when '& Co.' is made use of after the dealer's name, he has a partner or partners, or that such title includes more than one person."

Aside from this, the Tallant Banking Company did make inquiry at the time when inquiry should properly have been made, when the account was proposed by Perry to be opened, and had been informed by him that he was the sole owner. Nothing arose subsequently to awake suspicion upon the part of the Tallant Banking Company as to the accuracy of this statement, and, as far as the defendant is concerned, it must be borne in mind that all the rights which had accrued in behalf of the Tallant bank against Perry or A. B. Perry & Co., represented by Perry as sole owner, passed to the defendant by its assumption of such account, and the transfer of the note to it.

It cannot be questioned that, if the Tallant bank had the right to offset this note against A. B. Perry & Co.'s account, such right passed to the defendant bank under the transaction between them. Nothing certainly arose prior to the transfer by the Tallant bank to require any additional inquiry on its part. Neither, if that fact could affect its rights at all, did anything arise to call for inquiry by the defendant bank. It had a right to rest on the statements which Perry had made to the Tallant bank as to his ownership of the business, and of which it was informed when the transfer of the account and note were being negotiated. Besides, this inquiry is only required when such inquiry would have disclosed the facts. If inquiry had been made of the business community, it could have imparted no information other than that A. B. Perry was the owner of the business, because, under the partnership agreement, the actual management of it was left to him alone, and it was provided by the same instrument that the fact that Fuller & Co. was a

partner should be kept concealed by both of them, and the presumption is that they kept their agreement.

Nor would subsequent inquiry of Perry have been attended with any better results. He was bound by the contract equally with Fuller & Co. to conceal the existence of the latter as a member of the firm, and if inquiry had been made, doubtless would have done so. In fact, his whole course of conduct shows that he lived up to the agreement in this particular.

Under these circumstances it is apparent, that any inquiry made would be fruitless, without considering whether it lies in the mouth of Fuller & Co. to now complain of a failure to make inquiry concerning a fact which it had so cautiously provided should be kept secret and undisclosed.

Some importance is attached to the fact that, after business relations were established between A. B. Perry & Co. and the defendant bank, a loan was negotiated for three thousand dollars by A. B. Perry with the latter, and a note given executed by him in the firm name of A. B. Perry & Co. This note was paid. It is argued from the execution of this note in the firm name that the bank must have dealt with A. B. Perry & Co. as a partnership. We do not think this circumstance entitled to the importance which is claimed for it. As the bank understood and believed A. B. Perry and A. B. Perry & Co. to be the same, it would be a circumstance of no moment with it whether the note was signed by A. B. Perry or A. B. Perry & Co. Under either signature it would represent, in their belief, simply A. B. Perry the individual, and taking it in the manner in which it was executed may have been entirely for the convenience of Perry. As far as the bank was concerned, it knew no difference between the individual and the firm.

As to the finding, "that the defendant did not give A. B. Perry credit, nor accept his promissory note because of, or in reliance upon, the fact that he was alone the owner of the deposit account standing in the name of A. B. Perry & Co.," we are satisfied also, that the evidence is entirely to the contrary.

In determining whether the evidence supports this finding it is not alone sufficient to examine the relations existing between A. B. Perry and the defendant, but there must be also

taken into consideration the transactions previously had between the Tallant bank and A. B. Perry, because, as we have said, whatever rights had accrued in favor of the Tallant bank, at the time of its negotiations with the defendant resulting in the transfer of the note and the assumption of the liability on the deposit account, passed to the defendant.   The note was then due, and if, under the law upon the facts then existing, the Tallant bank had the right to set off the note against the account, it passed to the defendant.   That the Tallant bank credited Perry and accepted his note in reliance upon the fact that he alone, as he stated, was the owner of the deposit account, we think has been clearly shown.

When the transfer of the deposit account and note were being negotiated, it was stated to defendant by Mr. McKee, cashier of the Tallant bank, "that along with this note would come, among the other deposits, accounts to be transferred, an account of A. B. Perry & Co. . . . . That the note and account were one and the same thing, and we had a number of borrowers who borrowed money and kept money to their credit. . . . I stated in general terms the nature of the business.   I told them that Mr. Perry was doing business under the firm name of A. B. Perry & Co., because he told me that he preferred to do it that way; he thought it gave him a little strength; that he was the sole owner of the business.   That knowledge I got from Mr. Perry himself."   And the cashier of defendant bank, Mr. Kline, testified: "In the acceptance of these notes and security that were turned over to us by Tallant Banking Company, I acted upon the statement and representations made to me by Mr. McKee."   This evidence, to our mind, about which there is no contradiction, fully establishes, not only that the Tallant bank originally took said note on the faith of A. B. Perry's declaration that he alone owned the business of A. B. Perry & Co., and as a consequence the account standing in the name, but that the defendant took it, and intended to take it, with all the legal rights which existed in favor of such Tallant bank.   It is hardly necessary to say that when, under such circumstances, a person says he acted upon the statement and representation of another in a business transaction, that he is understood to mean that he relied upon them.

We have discussed these findings, and the evidence bearing on them, because the defendant, as a defense to the claim of plaintiff, insisted that it had a right to set off said note against the amount due on said account for the reason that it believed, and was justified in believing, that A. B. Perry was the sole owner of the business represented by A. B. Perry & Co.; that it did not know that any other person than A. B. Perry was a member or interested in said business, and that the corporation of W. P. Fuller & Co. was estopped from claiming any interest in said deposit fund adverse to the right of defendant to set off said note against it.

The findings of the court which we have called attention to negative this claim. The evidence in the case, which we hold is directly contrary to the findings, support it.

No one will claim that, if in fact A. B. Perry was the sole owner of such business, the right of set-off as exercised was not available to the defendant.

It is equally available when, from the facts of a case, it appears that the surviving partner is a dormant, or secret partner, who permits or authorizes his copartner to hold himself out as the sole member of the partnership, and on the faith of that appearance to obtain credit. This is the relation—a dormant and secret partner—which W. P. Fuller & Co. bore to the firm of A. B. Perry & Co., and the rule is elementary that, where a dormant partner permits the business world to believe that the ostensible partner is alone the owner of the business, he is estopped from claiming to the contrary against those who have, in good faith, acted upon such appearance, and cannot be heard to insist that a creditor under such circumstances has not the right to set off his debt against such ostensible partner. On this point it is only necessary to refer to the text-books. (Collyer on Partnership, p. 1099, and note; 1 Lindley on Partnership, p. 686; Bates on Partnership, sec. 1093; Barbour on Set-Off, pp. 56, 62, 103; Waterman on Set-Off, sec. 238. Though the cases are to the same effect: *Lord* v. *Baldwin*, 6 Pick. 352; *Van Valen* v. *Russell*, 13 Barb. 592; *Allen* v. *Brown*, 39 Iowa, 330; and *Brown's Appeal*, 17 Pa. St. 484.)

The case at bar comes squarely within the rule. Under the terms of their partnership agreement, such partnership was

not only to be secret, but it was to be kept secret. Perry, as the active manager of the firm, was to mingle with the business world ostensibly as the sole owner of the business. It was intended that he alone should be known in it, and was empowered from his very position under the terms of the partnership to deceive the public as to the true state of affairs, and authorized to make any representation which would induce those with whom he dealt to believe him the sole owner of the business. Fuller & Co. knew the inner conduct of their own firm, that business relations would naturally be established in various quarters, and that they were actually established with the Tallant bank and with the defendant; that inquiries would be made as to whom A. B. Perry & Co. represented. It was intended that this should not be disclosed, and Perry was enjoined not to do so. This necessitated actual deception if inquiry would be made, or such a course of conduct as would tend to suggest individual ownership and prevent inquiry. By its own act Fuller & Co. placed Perry where such deception could be practiced. In so doing it constituted him its agent, became bound by his representations, and is now estopped to question the truth of them against one who acted upon them in good faith. Fuller & Co. voluntarily assumed this secret relationship, and made the deception possible, and it is only just that it should suffer by reason of it rather than an innocent creditor who through its conduct was deceived as to the true condition of affairs.

It is insisted by the respondent that estoppel was not pleaded. As we construe the answer, there was at least an attempt to do so. Some facts tending to establish an estoppel are pleaded. No demurrer to the answer was filed or objection made to the introduction of evidence under it. The case was tried upon the theory that the plea was sufficiently made. Under these circumstances, the objection was waived, and cannot now for the first time be urged here. (*Hughes* v. *Wheeler,* 76 Cal. 230; *Davis* v. *Davis,* 26 Cal. 23.[1])

Appellant makes the additional point that W. P. Fuller & Co., being a corporation, could not legally enter into a copartnership with an individual, and for that reason no partnership ever existed between A. B. Perry and W. P. Fuller

[1] 85 Am. Dec. 158.

& Co. The disposition we make of the case upon a review of the findings under the evidence makes it unnecessary to discuss this point.

The judgment is reversed and the cause remanded for a new trial.

Henshaw, J., McFarland, J., Shaw, J., Angellotti, J., Van Dyke, J., and Beatty, C. J., concurred.