## BASS & HARBOUR FURNITURE AND CARPET CO. v. HARBOUR.

No. 3242. Opinion Filed April 17, 1914.

Rehearing Denied June 16, 1914.

1.   **CORPORATIONS—Acts of Stockholders—Internal Affairs—Estoppel.** The doctrine of equitable estoppel applies to the internal concerns of stock corporations. Saving, so far as public policy and the interests of creditors and other third parties are involved, the stockholders may bind themselves inter sese and in favor of the corporation by their own acts and agreements; and what will bind all the stockholders with respect to an obligation from the company to one of its members, will bind the company as such.

2.   **SAME.** Unanimous consent and acquiescence of the stockholders, acted on by the parties concerned to such extent as to materially change their position, preclude the assenting stockholders as individuals, and the corporation as such, from afterwards setting up legal informalities in matters of internal concern affecting only the interests of the stockholders, to the overthrow of rights that have been acquired on the faith of the consent and acquiescence.

3.   **TRIAL — Pleadings—Burden of Proof—Arguments of Counsel—Right to Open and Close.** The burden of proof is determined by the pleadings, and not by admissions of testimony made during the progress of the trial, and the burden of proof carries with it the right to open and close the argument to the jury.

4.   **SAME—Amended Answer—Admissions.** When, at the commencement of the trial, the defendant makes certain admissions of testimony and without objection assumes the burden of proof and proceeds to introduce his evidence, and his right to open and close the argument is questioned at the close of the testimony and resisted on the ground that the answer had not been amended in conformity to the admission made, **held,** that the parties having treated the answer as amended, the court should do the same and sustain the right claimed to open and close in the party assuming the burden of proof at the trial.

(Syllabus by Galbraith, C.)

*Error from District Court, Oklahoma County;*
*W. R. Taylor, Judge.*

Action by Bass & Harbour Furniture and Carpet Company against J. F. Harbour. Judgment for the defendant, and plaintiff brings error. Affirmed.

*Wilson & Tomerlin* and *Burwell, Crockett & Johnson,* for plaintiff in error.

*Ames, Chambers, Lowe & Richardson,* for defendant in error.

Opinion by GALBRAITH, C. The principal parties in interest in this action, J. F. Harbour and J. M. Bass, were formerly partners in business in Gainesville, Texas. They removed to Oklahoma City at an early day in its history and purchased the business of the Oklahoma Furniture Company, and organized a corporation under the laws of Oklahoma Territory, under the name of Bass & Harbour Furniture and Carpet Company, with a capital stock of $50,000, divided into 500 shares of the par value of $100 each. The last meeting of the stockholders and board of directors of this corporation seems to have been held on the 15th day of June, 1903. At that time the interest of a third party in the corporation was purchased by Bass and Harbour, and from that time until July 16, 1910, when the dissolution of the business occurred, Harbour owned and controlled 260 shares of the capital stock of the company, and Bass owned and controlled 240 shares. In June, 1910, Bass gave notice to Harbour of a dissolution, and informed him that one or the other of them must get out of the business. After frequent negotiations extending over a period of several days, it was agreed that Bass should submit to Harbour a "give or take proposition," and a contract in writing was entered into between Bass and Harbour, in which Mrs. Harbour joined, for the reason that she and Bass jointly owned the property known as the Insurance Building in Oklahoma City, but the corporation as such was not a party to the written contract. It was agreed that the property in which the parties were interested, and subject to division, should be divided into two groups. One of these included the Insurance Building,

located on lot 27, block 7, in Oklahoma City, which was in the name of J. M. Bass and Mrs. J. F. Harbour, and valued at $250,000, and the stock of merchandise, the store building, where the business was conducted, and the warehouse used in connection therewith, constituted the other group. Bass made the propositions as agreed and Harbour accepted the one which gave him the property in group one, and the sum of $71,000 as his individual share of their property. He transferred the 260 shares of stock controlled by him and executed deeds conveying his interest in the lots where the business was conducted, and, also, the warehouse lots as provided in the agreement of dissolution. In a written agreement, setting out the details of the dissolution, it was stipulated that each party should pay his "personal accounts" to the Bass & Harbour Furniture and Carpet Company, and this law suit has grown out of a misunderstanding and disagreement between the parties as to what was included in this term "personal accounts."

The books of the corporation show a personal account against Bass, and one against Harbour. The parties agree that these respective accounts are correct, and there is no trouble about them, but in the department of the ledger kept on behalf of the corporation in which were kept the personal accounts, is an account given as "warehouse account." It is agreed that this account arose in the following manner. Bass and Harbour, in the year 1909, owned four lots, in block 20, in South Oklahoma Addition to Oklahoma City. They agreed to erect on these lots a warehouse for the use of Bass & Harbour Furniture and Carpet Company, and that the corporation should advance the money to erect this building, and that the corporation would be repaid the advances so made in rent at the rate of $250 per month. The corporation advanced some $24,000 for this building and this "warehouse account" was opened on its books showing such advance. At about the time of the dissolution this account was credited with $1,250, being five months' rent at $250, and Bass gave his note to the corporation for one-half of the balance, and it is sought by this action to recover the remaining one-half of Harbour, which, it is charged, he agreed to pay under the stipulation that he would

pay his "personal accounts" to the corporation. There are two counts in the petition, the first claiming judgment for $11,462.09, as balance due on this "warehouse account," and the second asking for $126 due on Harbour's personal account. The answer admits the correctness of the account claimed in the second count, and tenders payment, but denies that anything is due as claimed in the first count, averring that this "warehouse account" was settled and paid in the dissolution arrangement. It is claimed that this account was changed, or rather the heading of it, after the agreement of dissolution had been made, by writing "J. M. Bass and J. F. Harbour, personal," thereon. . It seems that each of these parties had the assistance of counsel during the negotiations leading up to the agreement of dissolution, and that neither of the parties mentioned this "warehouse account" to his respective counsel, and, also, that the parties conferred with their mutual friend and banker, Mr. Hogan, prior to the dissolution agreement and during the negotiations in regard to the terms of the settlement, and neither referred to this "warehouse account" in that conference.

It is contended by the plaintiff in error that this warehouse account was a part of the assets of the corporation, and that the corporation is a separate and distinct entity from its stockholders, and that the corporation was not a party to the dissolution agreement between Bass and Harbour, and cannot be bound thereby, and that the corporation cannot be divested of its property by the individual act of its stockholders, and that the integrity of the assets of the corporation must be maintained, and that the defendant, Harbour, owes one-half of this account, that it is and was a "personal account" and that he should pay it.

The cause was tried to the court and jury, and at the trial the defendant claimed, and was allowed, to assume the burden of proof. The verdict of the jury was for the defendant on the first count, and for the plaintiff on the second count of the petition.

The cause was tried upon the theory that there was an ambiguity in the written agreement of dissolution; that it was uncertain as to what the parties intended to include under the term

"personal account" as therein used; that it was uncertain whether or not they intended to include by this term "warehouse account." The trial court allowed, over the objections of the plaintiff in error, oral testimony to show how the parties had conducted their business and how they had treated this "warehouse account" as tending to throw light on the question in dispute.

The principal question submitted to the jury and determined by it was as to how the parties had treated this "warehouse account," and whether or not it was their intention at the time of entering into the written agreement of dissolution that it should be included under the term of "personal account," or whether it was the intention and purpose of the parties under that contract to treat this account as settled and paid by the dissolution agreement. The verdict of the jury sustained the contention of the defendant in error, and the verdict and finding, being supported by sufficient evidence, is conclusive upon the court upon this appeal.

The only question of law argued by the plaintiff in error and urged with earnestness and skill both in the brief and oral argument, is made under the assignments of error relating to the action of the court in overruling its demurrer to the evidence. The burden of this argument is that a corporation is an entity separate and apart from its stockholders, and the title to its property is in the corporation and it can only be divested thereof by the acts of its proper officers, and that, as the corporation did not sign the contract, it is not bound by the terms of the agreement. We are frank to say that the numerous citations of authorities made on behalf of the plaintiff in error are good law and announce the correct general rule. It cannot be successfully denied that generally the law considers and treats a corporation as a separate entity from the individuals who form or compose it, and that the title to its property and its assets is in the corporation, and not in its stockholders, and, also, that individual stockholders, acting in their individual capacity, cannot divest the corporation of the title to such property, and that corporate property is conveyed by the acts of its officers taken in the manner provided by law. Counsel for defendant in error concedes the

correctness of these general rules, but it is contended that these general rules are not of universal application; that there are limitations and restrictions thrown around the application of the general rules to the facts of each particular case in order to effectuate justice and not to support an attempted fraud. This contention finds abundant support in the authorities.

It is said by Mr. Thompson:

"The proposition that a corporation has an existence separate and distinct from its membership has its limitations. It must be noted that this separate existence is for particular purposes. It must also be remembered that there can be no corporate existence without persons to compose it; there can be no associations without associates. This separate existence is to a certain extent a legal fiction. Whenever necessary for the interests of the public, or for the protection or enforcement of the rights of the membership, courts will disregard this legal fiction and operate upon both the corporation and the persons composing it." (1 Thompson on Corp., sec. 10.)

It will be remembered that J. M. Bass and J. F. Harbour owned and controlled this corporation. They determined its policy and directed its business. The last meeting of the stockholders and directors of the corporation was held on June 15, 1903. During the seven years intervening between that date and the separation, the act, wish, or agreement of Bass and Harbour was the act, wish, or agreement of the corporation. If it needed merchandise Bass and Harbour purchased it. If it needed money Bass and Harbour borrowed it. Bass and Harbour fixed the amount of rent it should pay, selected its officers, and did every other act that the board of directors or the stockholders usually do for corporations. During all these years Bass and Harbour treated and used the separate entity—the fiction, the corporation —the Bass & Harbour Furniture and Carpet Company, as a convenience in their business. In the light of these facts it does not become either Bass or Harbour to attempt to stand behind this fiction to his personal advantage and to the disadvantage of the other. The law may treat their individual acts in regard to their business "as if the act had been clothed with all the formalities of a corporate act."

The first paragraph of the syllabus in the case of *State v. Standard Oil Co.,* 49 Ohio St. 137, 30 N. E. 279, 34 Am. St. Rep. 541, reads:

"The doctrine that a corporation is a legal entity existing separate and apart from the natural persons composing it is a mere fiction, introduced for purposes of convenience and to subserve justice. Hence, where that fiction is urged to an end subversive of its policy, or such is the result of giving effect to it, it must be ignored, and an averment that a certain act has been done by the stockholders, simply as individuals, and to promote their individual interests, cannot preclude judicial inquiry as to whether the act in question was really done by them in the capacity and for the purposes alleged, or was, as a matter of fact, done to control the corporation and to affect the transaction of the corporate business, in the same manner as if the act had been clothed with all the formalities of a corporate act."

Mr. Justice Pitney, in discussing this question, said:

"In the eye of the law, corporations are entities separate and distinct from their constituent members, and not bound by the individual acts of the latter. The law deals with the corporation as an artificial person. Equity realizes that this legal entity is but a legal fiction. Looking through the form, it discerns the substance. It finds that a stock corporation is, in essence, an aggregation of individuals, a statutory partnership, with assignable membership, and limited liability of the members; and so the doctrine of equitable estoppel applies fully to all the internal concerns of stock companies. Saving so far as public policy and the interest of creditors and other third parties are concerned (none of which is involved in the present case), the stockholders may bind themselves *inter sese* and in favor of the corporation by their acts and agreements; and what will bind all the stockholders with respect to an obligation from the company to one of its members will bind the company as such.

"The authorities to this effect are abundant. Mr. Thompson, in his new work on Corporations, lays it down that the body of stockholders are in substance the corporation, that estoppels are concurrent as between the stockholders and the corporation; in other words, that whatever will estop the stockholders will estop the corporation, and whatever will estop the corporation will estop the stockholders.' 4 Thompson Corp., sec. 5269. And again at section 5314 he says: 'The body of stockholders, in every business corporation, are the persons who are incorporated. They are, in a substantial sense, the corporation. They are the

ultimate constituency and the directors who are elected by them from their own number are their officers. The ideal body is, in theory of law, the principal and the board of directors are the managing agents; but, in theory of equity, the body of stockholders are the beneficiaries in a trust and the directors are their trustees. It follows that many acts which the directors may do outside the scope of their powers become ratified and validated by the acquiescence of the body of shareholders, and, in general, the body of shareholders can ratify and confirm any act done by the directors or other officer of the corporation without a precedent authorization which the shareholders could have authorized originally.' See, also, 4 Thompson Corp., secs. 4496, 4497." (*Breslin v. Fries-Breslin Co.,* 70 N. J. L. 274, 282, 283, 58 Atl. 313.)

The management of the business of Bass & Harbour Furniture and Carpet Company by Bass and Harbour clearly shows that they treated the corporation as a fiction and convenience more than a reality. Bass will not be permitted to shield himself behind the fiction of this corporation to his personal advantage.

The foregoing authorities sustain the contention that the Bass & Harbour Furniture and Carpet Company was bound by the dissolution agreement the same as if it had been executed by it, acting through its proper officers and in pursuance of a resolution adopted by its board of directors, and justify the overruling of the assignment of error under consideration.

One other assignment is urged, and that is that the defendant was permitted to assume the burden of proof, which carried with it the right to open and close the argument to the jury. Authorities are cited to sustain the proposition that the burden of proof in every case is determined by the pleadings, and not by admissions of evidence that are made by counsel during the course of the trial. We concede that these authorities state the correct rule. The burden of proof is determined by the pleadings. *McCloskey v. Davis,* 8 Ind. App. 190, 35 N. E. 187; *Central of Ga. Ry. v. Morgan,* 110 Ga. 168, 35 S. E. 345; *Railway Co. v. Thomason,* 59 Ark. 140, 26 S. W. 598; *Douglass v. Hill,* 29 Kan. 527. However, since the admissions were made in this case at the commencement of the trial, and before any testimony had been offered by the plaintiff, and the counsel making

the admissions stated that having made the admissions the burden of proof was upon the defendant, and no objection being made to his assuming the burden and being permitted to introduce his evidence, until the close of the testimony when the question was raised by counsel for the plaintiff claiming the right to open and close the argument, we are constrained to hold that. the ruling of the trial court giving the defendant the right to· open and close the argument at the trial was not error, and, if necessary to sustain this holding. we should say that the answer was treated by the parties as if it had been amended to conform with the admissions made by the defendant at the beginning of the trial. *Allison v. Bryan,* 26 Okla. 520, 109 Pac. 934.

Numerous other assignments are made in the petition in error. but they all grow out of the theory of law advanced by the plaintiff in error, which theory has been disposed of against its contention in disposing of the first assignment herein.

The record in this case is voluminous. It was a long trial. The case was carefully tried, and it has been ably briefed and supplemented by earnest and able oral arguments for each of the parties. We are constrained to hold that upon the whole record the case was fairly tried and that the assignments should be overruled and the judgment appealed from should be affirmed.

By the Court: It is so ordered.