## YOUNGBLOOD v. BOAKE, Adm'r.

No. 17442—Opinion Filed Dec. 14. 1926.

Rehearing Denied March 8. 1927.

**1. Appeal and Error—Questions of Fact—Conclusiveness of Verdict.**

In the submission of an issue of fact to the jury. in the trial of law cases, if there is competent testimony reasonably tending to support the verdict of the jury and the judgment of the court rendered thereon, such judgment will not be reversed on appeal.

**2. Partnership—Existence not Imported by Use of Trade Name Ending with "Music Co."**

There being no statute prohibiting the use of a trade name by an individual, the use by him of the term "Music Co." after his name does not import the existence of a partnership, or that any other person than the individual named is interested in the business.

**3. Trial—Right to Open and Close Dependent on Burden of Proof.**

The right to open and close the argument in a case is given to the party upon whom rests the burden of proof, and the burden of proof is determined by the pleadings.

**4. Appeal and Error—Necessity for Prejudicial Error—Denial of Right to Open and Close.**

A judgment will not be reversed on account of the denial of the right to first introduce evidence or to open and close the argument, unless it affirmatively appears that the discretion of the court was abused and the party was prejudiced thereby.

(Syllabus by Pinkham, C.)

Commissioners' Opinion, Division No. 5.

Error from District Court, Caddo County; E. L. Mitchell, Assigned Judge.

Action by Robert L. Boake, administrator, with the will annexed, of the estate of J. M. Youngb'ood, deceased, against Emma A. Youngblood, for the recovery of certain personal property in the possession of the defendant alleged to belong to the estate of J.

M. Youngblood, deceased. Judgment for plaintiff and defendant brings error. Affirmed.

Morris, Johnson & Wilhite, for plaintiff in error.

W. H. Starkweather and Melton & Melton, for defendant in error.

Opinion by PINKHAM, C. The defendant in error, as plaintiff, instituted this action against the plaintiff in error, as defendant, in the district court of Caddo county. The parties will be referred to as they appeared in the trial court.

The plaintiff alleges in his petition that he is the duly appointed, qualified, and acting administrator of the estate of J. M. Youngblood, deceased; that on July 8, 1925, and for a long time prior thereto, the deceased, J. M. Youngblood, was engaged in business in Anadarko, Okla., where he owned and conducted a music store under the name of J. M. Youngblood Music Company; that after his death the defendant herein, who is the surviving wife of J. M. Youngblood, deceased, represented to the county court of Caddo county, Ok'a., that she was an equal partner in said Youngblood Music Company and ever since July 22, 1925, has claimed and is now claiming an undivided one-half interest therein, and that she has, after demand by plaintiff, refused to deliver said property, with notes and accounts thereto belonging to the plaintiff administrator.

Plaintiff further states that a part of said property consists of notes aggregating $24,886.48, and of open accounts aggregating $353.41, and plaintiff asks that all moneys collected upon said notes and accounts be delivered to plaintiff, together with said notes and accounts and all property in defendant's hands and belonging to said estate of J. M. Youngblood, deceased, and that defendant be barred from any claim as a partner.

The defendant, for her amended answer, denies all the material allegations of the plaintiff's petition, except as admitted; and admits that plaintiff is the duly appointed, acting, and qualified administrator of said estate; that she is a resident of Caddo county, and that she, as surviving partner of the J. M. Youngblood Music Company, has made and filed in the county court of Caddo county an inventory of the property of said partnership, and that she has possession of said property and is proceeding to close out said business, and has given bond for the faithful performance of her duty as surviving partner; that in the management and operation of said business she devoted

her time and attention and labor to the said business, and that in May, 1918, the defendant, for herself, and with the deceased, opened up said store as such and at all times said business has been a partnership composed of defendant and her deceased husband, doing business under the firm name, and that said partnership agreement was oral and not a written agreement; that she has been the principal manager of said partnership, and that she, with the help of the deceased, built up said business until the same became a thriving enterprise. and that by reason thereof she is entitled under the law to judgment herein.

For reply plaintiff denies all the material allegations of new matter in defendant's amended answer.

The cause was tried to a jury and resulted in a verdict and judgment for the plaintiff. From the order overruling the motion for a new trial and from the judgment, the defendant has duly appealed to this court by petition in error and case-made attached.

The first assignment of error involves the action of the trial court in overruling defendant's motion for a new trial. One of the grounds of the motion is that the verdict of the jury is not sustained by sufficient evidence and is contrary to law. The fourth assignment is based upon the refusal of the court to give instruction No. 1, requested by the defendant, which is as follows:

"The court instructs the jury that the evidence of the plaintiff is insufficient to sustain a verdict in his favor and you are therefore instructed to return a verdict for the defendant."

These two assignments of error present the one question of the sufficiency of the evidence to sustain the verdict and judgment. It is conceded by counsel for defendant in their brief that this court will not disturb the verdict of the jury in a law case if there is any evidence reasonably tending to support the verdict, but it is insisted that the evidence is clearly insufficient to support the verdict and judgment.

The only important question to be determined on this appeal is whether or not a partnership relation existed between the defendant and the deceased, J. M. Youngblood, at the time of his death. If such relationship did not exist it follows that the property involved herein belonged to the deceased at the time of his death, and therefore constituted a part of the estate of J. M. Youngblood, deceased, as determined by the verdict and judgment of the trial court.

The material facts disclosed by the record are as follows: The property involved in this action consists of certain personal property in the possession of J. M. Youngblood, deceased, at the time of his death on July 8, 1925.

The deceased moved to Oklahoma in 1901. and prior thereto he was engaged in the mercantile business in the town of Republic, state of Missouri. where he conducted a general store and handled, among other things, musical instruments, and when he moved to Oklahoma he established a similar business at Anadarko and moved a part of his stock of goods from Missouri to Anadarko, Okla., in 1903, and employed at that time in his store as a clerk the defendant herein.

It appears that the deceased and his first wife separated in 1903, and he married the defendant in 1905. The deceased and the defendant lived over the store at Anadarko a part of the time and in the rear of the store a part of the time. The business then conducted by the deceased and defendant was a general store, in which they dealt in musical instruments. The deceased had four children by his former wife. One of them, Mrs. Rector, worked for a time in the store, as did also a son. Frank Youngblood, after the marriage of the defendant and J. M. Youngblood, up until 1905. The son afterwards worked for a short period of time until the greater part of the store was sold to one Tingley in 1911 or 1912. At the time of this sale the musical instruments, principally pianos, were reserved from the sale.

It further appears that Mr. Youngblood also engaged in the automobile business with his son-in-law, Dr. Rector. The automobile business was conducted in the rear of the musical establishment from 1908 to 1917. A partnership contract was entered into between Rector and J. M. Youngblood in 1917, and at that time Rector and J. M. Youngblood constructed a new building and the business, known as the Ford business. was moved to the new building.

The record further discloses that in 1917 the defendant, Mrs. Youngblood, became ill and the store was closed for a time. It was reopened on May 5, 1918.

It is contended by counsel for defendant in their brief that on that date, May 5, 1918, it was by agreement between J. M. Youngblood and herself that the store was opened as the Youngblood Music Company. and that orders were given and business transacted as the Youngblood Music Company, except until November, 1920, the money was deposited in the name of J. M. Youngblood, but marked "J. M. Youngblood Music Department."

We are unable to discover from an examination of the evidence any agreement entered into on the 5th of May, 1918. The record does disclose, however, that all funds were deposited in the name of J. M. Youngblood until March 3, 1920. At that time an account was opened as "J. M. Youngblood Music Department."

The record shows that all deposits of money received were deposited in J. M. Youngblood's account; all the bills paid were either paid in cash or by check on the personal account of J. M. Youngblood up until the 3rd day of March, 1920.

The record further discloses that J. M. Youngblood took all of the notes involved in this action not to "J. M. Youngblood Music Department" or "Youngblood Music Company," but to "J. M. Youngblood"; that statements of money due were sent out and signed "J. M. Youngblood"; that the store was assessed for taxes in 1921, 1922, and 1923 in the name of J. M. Youngblood; that when it became necessary for the music store to obtain additional funds, J. M. Youngblood either gave his check on his personal account for the amount, or made his note to the bank and signed it "J. M. Youngblood." It appears that no note was ever made by "Youngblood Music Company". J. M. Youngblood deposited funds from time to time out of his personal account to the credit of the music account and gave checks on his personal account in payment of bills to the music company. The building in which the business was carried on was owned by J. M. Youngblood individually. No separate accounts showing the amounts withdrawn by Mr. Youngblood and Mrs. Youngblood, the defendant, were kept, and no books of any partnership business of any kind were kept, so far as the record discloses. All checks for living expenses were drawn out of the music account, as shown by the evidence.

The income tax returns, both state and federal, as shown by the record, were made out by Mr. Youngblood, signed and sworn to by him, and contain no reference to any partnership relation between Mr. Youngblood and the defendant.

After the death of J. M. Youngblood, the defendant took possession of the music store and all of its assets and as before stated filed an inventory in the county court. The property involved in this case, it appears,

is only a small part of the property owned by J. M. Youngblood at the time of his death.

The defendant relies upon certain oral statements made by J. M. Youngblood, deceased, to other parties, in which, according to the testimony of these witnesses, a partnership relation existed. This testimony is to the effect that Mr. Youngblood stated at one time to one of the defendant's witnesses that the defendant was a partner in the business; that Mr. Youngblood stated, according to another witness, that the defendant had an interest in the music business; that the defendant was interested and a partner in the business; that Mr. Youngblood stated that the defendant had a half interest in the music store.

This question of fact as to the existence of a partnership relation between the defendant and the deceased was, under proper instructions, submitted to the jury and its verdict involved a finding that such relationship did not exist, and there being competent evidence reasonably tending to support the verdict it will not be disturbed on appeal unless other errors complained of are such as to require a reversal of the case.

The second proposition presented is based upon the refusal of the court to give the defendant's requested instruction No. 2, which is as follows:

"The court instructs the jury that the name 'Youngblood Music Company' or 'J. M. Youngblood Music Company' are such names as are commonly used when a partnership exists and the use of said names raises a presumption that a partnership does in fact exist and you are instructed that, if you find from the evidence that the business involved herein did operate under the firm name of 'Youngblood Music Company' or 'J. M. Youngblood Music Company' and that the defendant gave her personal attention to such business, then the law raises a presumption that a partnership did exist; but such presumption is not conclusive and may be overcome by evidence, and it is for you to say from all the facts and circumstances in the case whether a partnership did in fact exist."

In support of the proposition that the refusal of the court to give the requested instruction constituted error, the defendant cites the following cases decided by this court: Moning Dry Goods Co. v. Wiseman et al.. 60 Okla. 94, 159 Pac. 259, and Cobb v. Martin, 32 Okla. 588, 123 Pac. 422.

In Moning Dry Goods Co. v. Wiseman, supra, the firm name was E. S. Wiseman & Co., and it was the contention of the Moning Dry Goods Company that one J. L. Jordan was a partner. The trial court sustained a demurrer to the evidence as to Jordan. The evidence disclosed that Jordan bought goods for the purchase price of which the plaintiff sought to recover, and this court, in passing upon the matter, said:

"The questions of partnership, when it began, when it ceased, if it did cease, whether or not it was in existence at the time these goods were purchased. whether the goods were purchased by the partnership, whether or not the partnership is liable for the payment of same, whether, if the partnership had ceased to exist before the purchase of the goods, the plaintiff had knowledge thereof, under sections 4462 and 4463, Rev. Laws Okla. 1910, are all questions of fact for the jury to find and determine in the light of all the facts and circumstances in evidence before them touching such matters and things."

The case was reversed for the reason that the evidence offered was sufficient to submit the question of fact to the jury as to whether Jordan was a partner.

In the Cobb v. Martin Case, supra, the firm name used was Cobb & Martin; it was claimed that Cobb and Martin were partners. In that case the trial court instructed a verdict, and declined to submit the question of partnership to the jury. This court held that it was error to refuse to submit the question of partnership to the jury, and in discussion of the matter it is said that a presumption of partnership arises from the use of a name such as is commonly employed when a partnership exists, citing Haug v. Haug, 90 Ill. App. 604, and Charman v. Henshaw et al., 15 Gray (Mass.) 293.

It is clear that the firm name of Cobb & Martin was such a name as was commonly used by persons doing business as partners.

These cases are not, we think, an authority for the instruction offered by the defendant in the instant case. The instruction offered, it will be observed, directs the jury to find that the name "Youngblood Music Company" or "J. M. Youngblood Music Company" was a name commonly used by parties transacting business as partners. This proposition cannot be sustained.

"Where there is no statute prohibiting an individual from doing business under a firm name, the use of the words 'and Co.' does not raise any presumption of partnership, or that any other person is interested therein." Ency. of Evidence, vol. 9, page 539.

In the case of Brennan v. Partridge, 67 Mich. 449, 35 N. W. 85, it is said:

"In a state where there is no statute pro-

hibiting the use of the name or an abbreviation to do business under, other than that of the individual, * * * there is no necessary presumption that, when '& Co.' is made use of after the dealer's name he has a partner or partners, or that such title includes more than one person."

We are aware of no statute of this state prohibiting an individual from carrying on business under a trade name, such as that used in the instant case.

Instruction No. 2 given by the court reads as follows:

"You are instructed that the determining issue in this case is the issue of partnership, that is, whether or not a partnership existed between the defendant and the deceased, at the time of his death, and, if you find from a preponderance of the evidence that a partnership did exist between defendant and the deceased at the time of the death of said J. M. Youngblood, then your verdict should be for the defendant. If you so find that a partnership did not exist between defendant and deceased at the time of his death, then your verdict should be for the plaintiff."

No exception was taken to this instruction, and we think it fairly submitted to the jury the only question necessary for determination in the case; that is to say, whether or not a partnership relation existed between the parties at the time of the death of J. M. Youngblood.

It is further contended that "the court erred in refusing the request of the plaintiff in error to open and close the argument in the case."

It is well settled in this state that the right to open and close the argument in a case is given to the party upon whom rests the burden of proof, and that the burden of proof is determined by the pleadings. Fifth Ave. Library Society v. Phillips, 39 Okla. 799, 136 Pac. 1076; Bass Furniture & Carpet Co. v. Harbour, 42 Okla. 335, 140 Pac. 956; Spaulding et al. v. Howard et al., 51 Okla. 502, 152 Pac. 106.

At the close of the evidence, and after the court finished reading its instructions, the record contains the following recital:

"Counsel for Defendant: At the close of the instructions, the reading of the instructions, the defendant announces that he assumes the burden of proof of all the issues and demands the right to open and close the argument. By the Court: Which request is by the court denied," with exceptions.

In the case of Congdon v. McAlester Carriage & Wagon Factory, 56 Okla. 201, 155 Pac. 597, it is said in the fourth paragraph of the syllabus:

"A judgment will not be reversed on account of the denial of the right to first introduce evidence or to open and close the argument, unless it affirmatively appears that the discretion was abused and the party was prejudiced thereby."

In the body of the opinion it is said that the right to open and close the argument could be waived, and that the authorities hold it is waived unless a timely request for that privilege is interposed, and this request must be made at the beginning of the trial, citing 38 Cyc. 1306.

It is earnestly argued that the defendant having at this stage of the trial requested of the court the right to open and close the argument to the jury, the burden of proof being upon the defendant to establish the existence of a partnership relation between defendant and deceased, the ruling of the court in this respect was prejudicial to the defendant in that, by being denied the right to open and close the argument to the jury, defendant was precluded from answering particularly that part of the argument of counsel for plaintiff alleged to have been prejudicial to the rights of the defendant.

The record, so far as we are able to discover, fails to show any objection made by counsel for defendant to the argument of counsel for plaintiff or any request that the alleged prejudicial language be withdrawn from the jury.

This alleged misconduct on the part of plaintiff's counsel was made one of the grounds in defendant's motion for a new trial, to which motion was attached an affidavit setting forth the language stated to have been used by counsel for plaintiff in his closing argument.

Upon the hearing of this motion a counter statement was made by plaintiff's counsel denying the use of the objectionable language attributed to him by the affiant.

The trial court, having heard the argument as to the complaint made by defendant, exercised the discretion vested in it in denying the motion for new trial upon this ground, and in the absence of a satisfactory showing that such action by the court was an abuse of discretion the same will not be disturbed by this court.

Upon the whole case we conclude that the judgment of the trial court should be affirmed.

By the Court: It is so ordered.