**TRADESMENS NAT. BANK OF OKLAHOMA CITY v. HARRIS, Rec., et al.**

No. 19115. Opinion Filed April 1, 1930.

Rehearing Denied Sept. 16, 1930.

Ledbetter, Stuart, Bell & Ledbetter, for plaintiff in error.

George Trice and Denver N. Davison, for defendants in error.

EAGLETON, C. The First National Bank of Coalgate was closed by the Comptroller of Currency of the United States. A. P. Harris, its receiver, brought suit against the Tradesmens National Bank of Oklahoma City for the recovery of certain securities held by the defendant bank. He alleged that the securities were owned by the First National Bank of Coalgate and were placed in the Tradesmens National Bank as security for two certain notes; that there was a balance due on the obligations of the

First National Bank to the Tradesmens National Bank a certain sum which had theretofore been tendered to the Tradesmens National Bank and by the Tradesmens National Bank refused. The plaintiff alleged further that the board of county commissioners of Coal county was asserting a claim to a portion of said warrants, the exact nature of which claim was to the plaintiff unknown, and asked that the board of county commissioners be required to assert whatever right. title, or interest it had in and to the securities. The Tradesmens National Bank answered by denying the authority of the plaintiff to bring this suit and by admitting possession of the securities, but alleging that said securities were pledged to the Tradesmens National Bank as security for all obligations of the First National Bank of Coalgate to the Tradesmens National Bank, and that there were other and additional obligations due from the First National Bank to the Tradesmens National Bank, that there was one note executed by T. M. (Tom) Mitcham, president of the First National Bank, and another note executed by C. H. Smith, vice president of the First National Bank, which obligations were negotiated and made by said individual officers of the First National Bank for and on behalf of the First National Bank and as obligations for the First National Bank, and that there was due and unpaid from the First National Bank to the Tradesmens National Bank a sum in excess of the total value of the securities pledged. The board of county commissioners filed answer asserting prior lien or claim in and to a certain portion of the securities involved. All these claims having been traversed by pleading, the cause went to trial. The court instructed a verdict in favor of the board of county commissioners in case the verdict was found for the plaintiff and against the board of county commissioners in case the verdict was rendered for the Tradesmens National Bank. Verdict was returned and judgment entered for the plaintiff and against the Tradesmens National Bank and for the board of county commissioners for a portion of the securities recovered. The Tradesmens National Bank appealed. For convenience the Tradesmens National Bank will be referred to as the bank. The plaintiff will be referred to as the receiver. The board of county commissioners will be referred to as the board.

The bank complains that the court instructed the jury that the defendant bank must sustain by a preponderance of evidence its affirmative defense, that the court erred in placing the burden on defendant bank to establish by a preponderance of proof that the notes individually signed by Mitcham and Smith for $48,000 and $25,-150.58, respectively, were not individual obligations of the signers, but were executed for and on behalf of and as obligations for the First National Bank. The bank in this complaint overlooks the fact that the bank, as an affirmative defense, set up and contended in its answer that these two notes, though apparently the obligations of the individual signers thereof (C. O. S. secs. 7666 and 7688), were in fact the direct obligations of the First National Bank, and that one who asserts affirmatively a fact on which he relies, either to recover or defend, has the burden of sustaining such averment by a preponderance of proof. The bank in making this affirmative defense had the burden to establish by a preponderance of proof its contention. 10 R. C. L. 898, 900; Fifth Avenue Library Society v. Phillips, 39 Okla. 799, 136 Pac. 1076; Cavitt v. Robertson, 42 Okla. 619, 142 Pac. 299; Kapp v. Levyson, 58 Okla. 651, 160 Pac. 457; Midland Valley Ry. Co. v. Cox, 69 Okla. 123, 170 Pac. 485; Congdon v. McAlester Carriage & Wagon Factory, 56 Okla. 201, 155 Pac. 597; Foster Oil Co. v. Rogers, 111 Okla. 103, 238 Pac. 435; Willoughby, Receiver, v. Ball, 18 Okla. 535, 90 Pac. 1017; Youngblood v. Boake, 124 Okla. 84, 253 Pac. 1017.

Though, under the rules of this court, as expressed in Stumpf v. Montgomery, 101 Okla. 257, 226 Pac. 65, 32 A. L. R. 1490, a presumption of law must disappear in the face of positive proof controverting the presumed fact, yet the defendant has the burden of proof of affirmative defensive matter, and this court will not reverse a cause because of a technical inaccuracy of statement made by the trial court in his instruction. The instruction properly placed the burden of sustaining the affirmative allegations of the bank on the bank. The reason therefor given by the court, even if not legally accurate, is harmless. As was said in Midland Valley Ry. Co. v. Cox, supra:

"Instructions, as a general rule, should be construed together as a whole, and, when so construed, if they properly state the law, they will not be objectionable, although some of them or portions thereof, standing alone, might be misleading or may be technically inaccurate."

To the same effect is First Nat. Bank of Tishomingo v. Ingle, 37 Okla. 284, 132 Pac. 895, and authorities therein cited.

The court instructed the jury that the plaintiff had the burden of proof of his cause to sustain all the material allegations of his petition by a preponderance of proof, as well as instructing the jury that the bank, in establishing its defense to the plaintiff's cause of action, was required to establish its affirmative defense by a preponderance of proof. The plaintiff in all causes of action must sustain his cause of action. The defendant may by negation disprove such contentions, or may, by an affirmative defense, establish a different state of facts which would relieve the defendant of the obligations which would follow under the facts alleged and proved by the plaintiff, but, in establishing such affirmative defense, the defendant becomes the proponent and has the burden to bear, has the onus of proof as in a new cause of action. The defendant having met that burden of proof by competent evidence, the burden again becomes that of the plaintiff to sustain his contention. So it was in this cause. The court properly so instructed the jury. The jury found that the plaintiff had sustained his burden throughout by a preponderance of proof.

. The bank next complains that the court erroneously refused to admit in evidence for all purposes a letter written by Tom Mitcham, president of the First National Bank to the Tradesmens National Bank. The court instructed the jury it should be considered "for the sole and only purpose of throwing light upon the question of whether or not the notes executed by Mitcham and Smith were obligations of the First National Bank of Coalgate, Okla." There was no other purpose for which this letter could have been considered under the issues joined by pleading and evidence. But the bank complains in this instruction the court also said: "A national bank is not permitted to enter into a guaranty of the obligations of any other corporation or person." We find no error in restricting the purpose for which this letter was allowed to be introduced in evidence. National banks do not have authority to issue letters of guaranty, though such a bank may be so bound in the discount and rediscount of commercial paper which transactions are carried on in the usual course of business. So there was no error committed by the court in pronouncing in his instruction the general rule that national banks cannot guarantee obligations of other persons or corporations. Though this statement of the law is not all inclusive, such uncertainty and incompleteness was harmless. First Nat. Bank v. Monroe 135 Ga. 614, 69 S. E. 1123, 32

L. R. A. (N. S.) 550; Commercial Nat. Bank v. Pirie, 82 Fed. 799; Bowen v. Needles Nat. Bank, 87 Fed. 430, 94 Fed. 925.

The discount of commercial paper in the usual course of business may carry with it the guaranty of the discounting bank, as was held in Hanover Nat. Bank v. First Nat. Bank, 109 Fed. 421; Rankin v. Tygard, 198 Fed. 795; First Nat. Bank v. J. L. Mott Iron Works, 258 U. S. 240, 66 L. Ed. 593; Citizens Central Nat. Bank v. Appleton, 216 U. S. 196, 54 L. Ed. 443; First Nat. Bank v. Hartford, 273 U. S. 560, 71 L. Ed. 774. So where these loans were made by the bank, it will be liable even where the transaction was ultra vires if the bank gets the money and benefit thereof. Also, where an ultra vires act causes credit to be advanced on purported guaranty of the bank to pay from monies to be received, the bank must account as for money had and received even though not bound by the guaranty contract. Aldrich v. Chemical Nat. Bank, 176 U. S. 618, 44 L. Ed. 611; Crowder State Bank v. Aetna Powder Co., 41 Okla. 394, 138 Pac. 392; Rankin v. Emigh, 218 U. S. 27, 54 L. Ed. 915.

We next come to the complaint made by the bank that the court erred in failing to direct a verdict against the plaintiff and for the defendant bank. The bank reasons thus: Instruction No. 8 states that "if the bank receives the proceeds of the loan* * * your verdict should be for the defendant;" that the money obtained by these notes by uncontroverted testimony was deposited in the Tradesmens National Bank to the credit of the First National Bank. So the court should have instructed the verdict for the bank. The bank further contends that it is not responsible for nor legally bound to follow the disbursement by the First National Bank made of the funds so acquired. Instruction No. 8 was ambiguous. It said:

"You are further instructed that, in the case at bar, it does not matter whether the notes in controversy were signed by the First National Bank of Coalgate or by its officers, if the bank received the proceeds of the loan; in other words, you are instructed that under the law if the officers of a bank execute notes to another bank, or to an individual and the bank with which they are connected receives credit for the loan and the benefits thereof, that it is a bank transaction, and if you find from the evidence in this case that the First National Bank of Coalgate, Okla., received credit for the funds borrowed, regardless of who signed the notes, then, your verdict should be for the defendant, Tradesmens National Bank of Oklahoma City, Okla."

This might have been understood as

instructing the jury, in substance, that if the First National Bank of Coalgate, with which Mitcham and Smith were connected, received credit for the loan that it was a bank transaction, thus going much too far in holding the First National Bank of Coalgate for loans personally made by its officers. However, the jury was unable to understand fully this instruction and came back for an explanation. Counsel for both the receiver and the bank in open court consented to the instruction being clarified orally. The court, with reference to instruction No. 8, said:

"That irrespective of whether these notes were signed by the First National Bank of Coalgate, or by the officers of that bank that if that transaction was actually borrowing of money by the First National Bank of Coalgate from the Tradesmens National Bank, that the First National Bank of Coalgate received the money, and it was paid out of the Tradesmens National Bank as from a lender to a borrower, then, irrespective of who signed the notes, that the First National Bank of Coalgate would be liable on these notes and that is what that means and that is the import of the instruction."

No objection was made to this instruction or exception taken at the time. The oral instruction was given on June 9, 1927. On July 30, 1927, the first objection thereto was made. Counsel for the bank asked and the court pretended to allow an exception to it. The objection was not timely made and the exception was too late, C. O. S. sec. 566. However, were the objection timely made, it would avail the bank nothing, for the oral instruction correctly stated the law, thus clarifying for the jury instruction No. 8, which would, if standing alone, have been improper. The First National Bank would not be held liable for moneys it received on deposit, or in payment of obligations due it even by officers of the bank merely for the reason that the party who made the payment to, or made the deposit in the First National Bank, had borrowed the money from another person or bank. This would as well be true were the person who made the payment to the First National Bank, or made a deposit in the First National Bank, a stranger, an officer, a director, or stockholder of that bank.

What of the evidence sustaining the jury verdict? The jury, though some of the evidence was conflicting, found that the Mitcham and Smith notes were not obligations of the First National Bank. From officers of the bank, it was elicited that the bank officers conferred with the officers of the First National Bank for a considerable period of time prior to the date these notes were made with reference to the condition and the affairs of the First National Bank; that they knew a voluntary assessment and contribution from the stockholders of the First National Bank was in contemplation and there was positive evidence that the president or chairman of the board of the Tradesmens National Bank knew that such an assessment had been made and that these loans were approved by the bank that Mr. Mitcham and Mr. Smith might be able to meet their assessments as stockholders and pay their contributions to the first National Bank. The Tradesmens National Bank, on its records, carried these two notes as loans to the individual officers of the First National Bank of Coalgate, and did not carry on their records these obligations as obligations of the First National Bank itself. Officers of the Tradesmens National Bank wrote several letters which were introduced in evidence containing statements with reference to these loans which are congruous with personal loans to these individual officers of the First National Bank, but are not consistent with the facts were these two notes made for and on behalf of the First National Bank. We cannot see where error was committed in failing to instruct a verdict against the plaintiff and for the defendant bank. The evidence tends to support the verdict of the jury.

The bank next contends that instructions numbered 5 and 6 are ambiguous, inaccurate, and conflicting, and the giving of them was reversible error. Instruction No. 5, in substance, instructed that the burden of proof was upon the plaintiff to prove by preponderance of evidence his case, that on the bank fell the burden of proof to establish by preponderance of proof its affirmative defenses. Instruction No. 6 suggested that there was "but one disputed issue of fact;" that is, whether the Mitcham and Smith notes were personal obligations of the makers, or the obligations of the First National Bank of Coalgate, and that the verdict in the cause should follow the determination of this fact. There were many incidental items of conflicting evidence, all going to the one controversy of fact as suggested in instruction No. 6. The plaintiff receiver alleged his cause of action. The defendant bank, by way of answer, made an issue on the authority of the receiver to bring the action, and affirmatively asserted that the so-called Mitcham and Smith notes were, in fact, additional obligations of the First National Bank of Coalgate. By evidence the defendant bank did not endeavor to dis-

prove the authority of the receiver. though under the pleadings it was necessary for the receiver to establish his authority by proof in order to sustain his cause of action. The instructions referred to are clear and are not in conflict with each other. Considered in connection with the other instructions by the court, given, including the supplemental oral instructions by the court given without objection or exception on the part of the defendant bank, the court properly instructed the jury. If any weakness inheres therein, the bank has no cause of complaint by reason thereof. The material question presented to the jury was: Did the First National Bank of Coalgate borrow this money, or did the parties whose names appear on the notes obtain personal loans from the defendant bank? This question was clearly submitted to the jury. The jury convincingly, on consideration of substantial proof, adduced by competent evidence, found that the money was not borrowed for the bank or for the benefit of the bank, but was borrowed by these two individual officers of the First National Bank of Coalgate to pay their individual stockholders' contributions to the First National Bank. It is true that the defendant bank could not be held responsible for the use to which the money which was borrowed from it was put. It is as well true that the defendant bank could not hold the First National Bank of Coalgate as by contract when no contract existed between them merely because persons borrowing from it, the Tradesmens National Bank, used money borrowed in paying obligations which the borrower had with the First National Bank of Coalgate.

The bank further complains that error was committed by the court in failing to allow the bank, on cross-examination of witness introduced by the defendant board, to introduce in evidence a certified copy of a pleading, previously filed by the board in another lawsuit. to impeach the witness. Inasmuch as the court, in instruction No. 7, instructed the jury that, in case it should find for the defendant bank, it should find against the defendant board, we do not see where any harmful error was committed materially affecting the rights of the defendant bank as against the defendant board. The receiver did not offer the witness which was being cross-examined, and the receiver so far as the defendant bank is concerned, is the successful party. No harm was done by excluding this evidence. No error was committed by this rule.

The bank next contends that the trial court committed prejudicial and reversible error in allowing the cashier of the First National Bank of Coalgate to testify from his knowledge and the bank records concerning the history of the several notes which were testified about, and as to how the records of the First National Bank reflected the credits and debits of the account or accounts existing between the two banks, and asserts that such evidence is hearsay. The defense to the cause of action by the defendant bank asserts that the understanding and agreement existing between the First National Bank and the Tradesmens National Bank was different from what the signed obligations in the Tradesmens National Bank expressed. To establish the facts contended for by the defendant bank, extraneous parol testimony was required, and such evidence under the circumstances contended for in this case is competent. It is competent under such circumstances to show by the conduct of the parties, by the action of the parties, by the manner in which they handled the transactions in controversy to aid in establishing what the understanding of the parties to the purported agreement was, and any person having direct and personal knowledge of the conduct of the parties with reference to these controverted questions was competent to testify as to that conduct and the method of procedure followed. Not only was the testimony of the officers of the Tradesmens National Bank and the records of the Tradesmens National Bank competent to throw light on the controversy of this lawsuit, but also the records of the First National Bank of Coalgate, and the testimony of officers of the First National Bank of Coalgate who had knowledge of the facts in controversy, were competent to go before the jury to aid in arriving at the facts.

Again the bank complains that it was not allowed to open and close the argument to the jury. We do not pass on this question, as no timely request was made by the defendant bank to open and close this case. Congdon v. McAlester, Carriage & Wagon Factory, 56 Okla. 201, 155 Pac. 597; Youngblood v. Boake, 124 Okla. 84, 253 Pac. 1017.

The bank again complains and asks for a reversal and a new trial of this cause because of prejudicial remarks made by counsel for the receiver in their arguments to the jury. One of counsel stated that if the facts of the case were as contended for by the defendant bank, Mr. Walker, Mr. Mitcham, and Mr. Smith should be in the federal penitentiary. The court refused

to strike said statement, and as reason therefor stated:

"The remarks of counsel preceding the remarks which are now referred to, were that: 'Counsel for defendant has stated that if the conditions existed as testified to by Mr. Smith, that Mr. Walker should be in the insane asylum at Norman,' the objection of defendant is overruled."

Without going into the merits of the different types of institutions referred to, we cannot see that any harm resulted from this effort on the part of receiver's counsel to vie with bank's counsel in making proper placement of the parties to this transaction, which transaction, viewed from the ultimate outcome, did not comport well with successful banking practices.

Further remarks to the jury made by other counsel for receiver were objected to. We do not pretend to pass upon and approve or disapprove the manner in which the bank attempted to, or did get these questions before this court. This was a hard fought case. Much conflicting testimony was before the jury. Counsel in their arguments are not restricted in what they say to the evidence of the case, but are permitted to draw their conclusions therefrom. They are, of course, not allowed in argument to place material matters before the jury which are not testified to, and which are not sustained, at least, by imputation from the evidence itself. The purpose of the arguments to the jury is to aid the jury in analyzing the evidence, and to get clearly to the jury the theory of each of the parties to the litigation. Inasmuch as the remarks now complained of were withdrawn from the jury by the court, we cannot see from an examination of all the evidence and record where any harm was done the bank by having the statements made before the jury even if not entirely proper.

This controversy appears to have been fairly and clearly presented to the jury, and the evidence reasonably tends to sustain the verdict returned. The cause is therefore affirmed.

DIFFENDAFFER, HERR, BENNETT, and LEACH, Commissioners, concur.

By the Court: It is so ordered.

Note.—See under (1-) 10 R. C. L. p. 898; R. C. L. Perm. Supp. p. 2777. (2) 14 R. C. L. p. 818; R. C. L. Perm. Supp. p. 3683. See "Appeal and Error," 4 C. J. §2986, p. 1004, n. 63. "Contracts," 13 C. J. §517, p. 546, n. 54; §968, p. 771, n. 50. "Evidence," 22 C. J. §16, p. 73, n. 72. "Trial," 38 Cyc. p. 1486, n. 67; p. 1779, n. 76; p. 1790, n. 20.