### McDOWELL v. DROZ.

No. 26444.   Feb. 2, 1937.

Hill & Hill, for plaintiff in error.

Mauntel & Spellman, for defendant in error.

PER CURIAM. This is an appeal from a judgment of the district court of Ellis county, Okla., in the sum of $2,472.84 in favor of the defendant, on a suit for dissolution of a partnership and for an accounting between the partners. We will refer to the parties, plaintiff and defendant, as they appeared in the district court. Rather extensive pleadings were filed by each of the parties. The plaintiff filed a petition and an amended petition and the defendant filed an answer and an amended answer. At the trial, however, the parties agreed on a dissolution of the partnership, and further agreed that the only question for determination was the amount due each of the partners. The plaintiff in error recites six assignments of error. It is unnecessary to consider them separately; all six may be determined on the construction of the partnership contract between the plaintiff and the defendant.

The plaintiff contends that under the terms of an oral contract entered into at the inception of the partnership, to wit, on or about the 1st day of May, 1928, the defendant was to have active charge of the business and was to keep the books and was to receive $50 per week for his salary, if the partnership business netted that amount. If it netted less than $50 per week, then the defendant was to have the amount so made. If it made more htan $50, the difference between that sum and up to $100 was to be paid the plaintiff, and all over $100 netted by the partnership was to be divided equally between the partners. The defendant claimed that he was guaranteed a salary of $50 per week, whether the business netted

that amount or not. In the trial of the case plaintiff testified in accordance with his pleadings, and in addition introduced a witness by the name of Bradley. The plaintiff and the witness, Bradley, both testified as to a conversation had with the defendant and his attorney just a short time before suit dissolving the partnership was filed. The plaintiff testified in part as follows:

"Q. * * * Now, what was it you say Mr. Droz said? A. Well, I don't remember the exact figures, but you asked him how he made a living down there the way the show business had been going; that he had hardly made a living and had to borrow money to keep the show going, and that the salary he was drawing was drastic, or words to that effect. and Mr. Droz said he got $50 a week if the show made it; that if we had a $60 business, he got $50 that week and McDowell got $10; if we had a hundred dollar business, he got $50 and McDowell was to get $50; if it was a $150, we would take each $50 and split the other, or $75 each; and he went on to illustrate, if he got $35, McDowell got nothing, and it was during the conversation I had reference to when you asked him to repeat that, and when he did you said that wasn't your understanding."

Mr. Bradley, the witness introduced by plaintiff, testified in part as follows:

"Q. Now, relate that conversation in so far as it pertains to the compensation. A. Mr. Droz had a little memoranda showing the indebtedness of the partnership, and he had submitted that memoranda to Mr. McDowell and Mr. Mauntel and myself, and in the memoranda there was some items of salary, and when that was discussed, I asked Mr. Droz if he had any claim for back salary, and he said no, he hadn't any salary indebtedness; that when he went went there he thought he was going to get $50 a week, but that he hadn't during the entire period, and the figures he had on his paper represented the deficiency in the $50 a week payment, and I asked him what the arrangement was, and he said he got $50 a week if the show made it; if it run over that, if it run a $100 a week, McDowell got $50. and if it run over a hundred they divided it, and if it only made $35 or $40, or less than $50, then he would get that; and Mr. Mauntel spoke up and said that was not his understanding, and Mr. Droz repeated practically the same thing again, and there was nothing more said about the salary."

The defendant, in substance, testified that he was to receive a guarantee of $50 a week, whether the partnership made that amount or not, and introduced in evidence the third paragraph of a letter written November 28, 1928. by the plaintiff to the defendant, and which reads as follows:

"Regarding your drawing account; you will recall I said we would go 50/50 on everything. You and Hazel handle that end of it and I would handle the buying. We would stand equal amounts of the investment and you folks were to be guaranteed $50 per week salary, if the profits were only $55 on the week, you get the 50 and I was to get the 5, if they were $200 we would each get $100. In other words, an equal division, but I felt with an assurance that you would at least get a living out of it and a new venture you would feel more safe than just taking a chance. Please let me know if this wasn't your understanding of the matter."

The record does not show that this letter was ever answered and the letter was written several months after the partnership was formed and the oral contract made. The plaintiff explains the letter by stating that it was not competent in itself; that the guarantee wasn't the right word, as his vocabulary is limited, the intent being that they, defendant and his wife, were assured they would get $50 if the show made it. The defendant further testified that he kept the books and records, and that he made weekly and monthly reports to the plaintiff; that the business was successful from the 1st day of May, 1928, the date of its inception, until the 1st day of June, 1930, but no money was made in the business from June 1, 1930, to January 1, 1934; that during all of said time nothing was ever said about his salary and that he made no report to the plaintiff of any claim for back salary. The defendant in conversation with Bradley, the witness, stated that if he did not make his salary he did not get it; and in Wellington, Kan., the witness Bradley testified that the defendant stated he had no salary indebtedness and that the matter was called to his attention again and he repeated he had no salary indebtedness. He also testified that he made no entry on his records of his salary indebtedness and that he never computed it at any other time. He also testified that his claim for salary originated from the fact of the dissolution of the partnership; admitted that in none of his reports, either when the business was making money or when it was losing money, did he claim a salary, and also testified that he never made any report or claim for back salary until suit for dissolution of the partnership was filed. The record shows his reports commencing January 1, 1934, to the date a receiver was appointed herein; it shows his drawing account, shows indebtedness of the partnership, the net gain of the partnership, but nowhere makes mention of any back salary.

His testimony further shows that from June 1, 1930, to January 1, 1934, the partnership made no money. It was necessary for him to buy new equipment, to pay running expenses, and to meet other obligations out of his own personal funds. He stated that the plaintiff refused to furnish proper equipment and to render proper assistance to him in the conduct of the business. There was more or less friction during all of said time, and, yet, at no time, did he ever mention any back salary that might be due him. His conduct convinces this court that the original contract entered into between the partners was in the terms as stated in plaintiff's amended petition and as testified by plaintiff. It is manifest that the plaintiff so considered the contract, and the defendant's conduct during the time said partnership was in effect certainly is in accord with such interpretation of the contract. The action of the parties in this case is the best evidence as to what the contract really was and how the parties understood it.

In the case of Tradesmen's National Bank of Oklahoma City v. Harris, 145 Okla. 54, 291 P. 38, this court laid down the rule as follows:

"Where it becomes a question of what the agreement of the parties was, the conduct of the parties may be proven to establish the interpretation placed on the agreement by the parties themselves."

The rule is also stated in 6 R. C. L. 852, as follows:

"It has been said that in order to render applicable the rule that contemporary construction of a contract by acts of the parties is entitled to great weight, it should appear with reasonable certainty that they were acts of both parties, done with knowledge and in view of a purpose at least consistent with that to which they are sought to be applied. In such a case the practical interpretation by the parties themselves is entitled to great, if not controlling influence, in ascertaining their understanding of its terms. In fact, where from the terms of the contract, or the language employed, a question of doubtful construction arises, and it appears that the parties themselves have practically interpreted their contract, the courts will generally follow that practical construction. It is to be assumed that parties to a contract know best what was meant by its terms, and are least liable to be mistaken as to its intention; that each party is alert to protect his own interests and to insist on his right, and that whatever is done by the parties during the period of the performance of the contract is done under its terms as they understood and intended it should be. Parties are far less

liable to have been mistaken as to the meaning of their contract during the period while harmonious and practical construction reflects that intention, than they are when subsequent differences have impelled them to resort to law, and one of them then seeks a construction at variance with the practical construction they have placed upon it and what was intended by its provisions. It has even been said that the practical construction of the ambiguous terms of a contract will be adopted, although the language used may more strongly suggest another construction. According to same decisions, the practical construction placed upon the contract by the parties themselves may render it immaterial to consider what might be the litteral construction of its terms. This conclusion is based upon the view that parties to a contract have a right to place such an interpretation upon its terms as they see fit, even when such an interpretation is apparently contrary to the ordinary meaning of its provisions."

To the same effect see Loomis Fruit Growers Association v. California Fruit Exchange (Cal. App.) 16 P. (2d) 1040; Wiebener v. Peoples, 44 Okla. 32, 142 P. 1036; Frazier v. City of Ardmore, 103 Okla. 31, 229 P. 143; Minnetonka Oil Co. v. Cleveland Vitrified Brick Co., 27 Okla. 180, 111 P. 326; Rider v. Morgan, 31 Okla. 98, 119 P. 958.

In the case of Gladys Bell Oil Co. v. Clark, 147 Okla. 211, 296 P. 461, this court states:

"The chief object in construing contracts is to ascertain the intention of the contracting parties, and subsequent acts and conduct of the parties may be considered in arriving at the intention."

And in 47 C. J. 773, the law is stated as follows:

"Construction by partners. If the partners have put a particular construction upon the articles or on ambiguous terms, it will be enforced by the courts, even though the result is to modify or even to cancel express stipulations."

And in the case of Hopkins v. Texas Co., 62 Fed. (2d) 691, it is stated:

"This mutual interpretation of the lease contracts affords cogent evidence of their meaning."

And in the case of Earp v. Mid-Continent Petroleum Corp., 167 Okla. 87, 27 P. (2d) 855, this court states:

"When a lease contract contains ambiguous and uncertain provisions, and the parties to the contract have placed a given construction upon the ambiguous provisions thereof and have governed their conduct in accordance with their construction, the construction by the parties will be given great weight, and should ordinarily control the interpretation of the contract by the court."

It is hard to believe that any man in the financial condition of the defendant, as shown by the undisputed evidence in this case, in fact, as shown by the testimony of the defendant himself, would continue a losing partnership business from June 1, 1930, to January 1, 1934, would advance his own money for the necessary expenses of the business, would make weekly reports a part of the time, and monthly reports most of the time to his partner, who failed to furnish necessary machinery and equipment as agreed, and failed to give proper assistance in the conduct of the business and with back salary amounting to hundreds of dollars coming to him, without ever mentioning one thing about said salary and without ever putting in any of his reports any claim therefor. Furthermore, as defendant testified, even when the business began to make a profit in January, 1934, reports showing the profits were made each month to his partner up to the date of the receivership, and at no time was any back salary mentioned, either orally or in said reports. In view of the fact that the defendant was dissatisfied with the plaintiff's conduct with reference to the partnership business, it seems just humanly natural that he would have called plaintiff's attention to the back salary due him, if in truth and in fact any such salary had been due. His conduct is certainly in harmony with the plaintiff's pleadings and his testimony that defendant's salary was to be $50 a week only in case the show made that much each week. His conduct is certainly in harmony with his statements made to the witness Bradley that he was to receive $50 per week only in the event the show made it and that he had no claim for back salary.

At no place in the record does it appear that the defendant denies the conversation with Bradley, or the substance thereof. A positive admission against interest, when not denied, has probative effect in any case. In the first answer filed by the defendant, he does not ask for back salary, simply asks that the partnership be dissolved, and that the property, if any, be divided equally between the partners. The clear weight of the evidence is in favor of the plaintiff's testimony and against the defendant.

This is an equity case and this appeal is to determine a question of fact. When a question of fact is before this court in an equity case, it is necessary for the court to review the evidence and weigh the same and to render such judgment as the trial court should have rendered. Mackie v. Lefeber, 172 Okla. 99, 45 P. (2d) 148.

The evidence in this case shows that the amount due the partners was paid up to June 1, 1930. From June 1, 1930, to January 1, 1934, the business did not net $50 per week. The defendant kept the records, and under the contract as construed by this court was entitled to the profits up to $50 per week. The record is not clear as to just what he received during that time, but this court infers that as he kept the record, he received all the net profits. From January 1, 1934, to the date of the appointment of a receiver, the reports made by the defendant, as shown by the case-made, disclose a net profit of $3,562.76. The report covers the business transacted during each month instead of each week. At the rate of $50 per week the defendant should have received during said time $2,029.40, and the plaintiff should have received the sum of $1,391.09; and in addition to these sums the partnership earned $142,27, which should be equally divided between the plaintiff and the defendant, thus making defendant entitled to $2,100.54 and the plaintiff entitled to $1,462.22. The record shows that the defendant did receive from January 1, 1934, to the date the receiver was appointed, the sum of $1,350.17, thus leaving a balance of $750.37 due the defendant, and the plaintiff received nothing, so there is $1,462.22 due the plaintiff from the partnership. From the record it is evident that the partnership property has been sold and the money is being held pending the decision of this court. The amount due the plaintiff from the partnership is $1,462.22 less the amount due the defendant on the division of the profits from January 1, 1934, which is $750.37, or $711.85. The plaintiff should be paid said sum of $711.85 out of the proceeds derived from the sale of said partnership business and the remainder of said proceeds derived from the sale of said business should be equally divided between the partnership.

In the case-made and in the brief of defendant in error an item of $800 is mentioned as having been advanced by the defendant in error. The record shows that the plaintiff and the defendant conferred about the defendant's claim for advancements made by him in cash and for material to run the show, and that they agreed that the partnership owed the defendant, Droz, $800 for said advance, and that all the property would then belong to the partnership. The court makes this statement at the trial and made such a finding in the judgment, but does not render a judgment that the defendant recover said item in addition to the salary recovery. It appears from the record that this item is involved in the account submitted by the various exhibits 1 to 14. The defendant, Droz, testified, as shown on page 130 of case-made, as follows:

"When I put this money in the show it was shown on those monthly reports."

It also appears that the defendant does not claim the item of $800 in addition to the allowance for salary, and the reports made by the defendant from January 1, 1934, to October 28, 1934, as stated in the brief of defendant in error on page 13, show as follows:

"Exhibits from 1 to 14 took into consideration every item that was advanced by these parties."

And on page 15 of the defendant's brief, it is further stated:

"From the foregoing it would seem that this judgment should be sustained; that the defendant, Droz, should receive the salary as found due by the district judge. Furthermore, the item of money belonging to the plaintiff herein, that was earned by the show from month to month, as shown by the exhibits in the year 1934, was disposed of under the question of money advanced by the defendant, and for which the defendant was allowed the sum of $800."

And in the concluding paragraph of the brief of defendant in error, it is stated:

"Since the claim for money advanced has already been paid as a debt against the partnership to the defendant, that such money, approximating $800 be equally divided between the plaintiff and the defendant."

It is evident the only question for this court to determine was the question of salary.

It necessarily follows that the judgment of the district court must be reversed and the cause remanded, with directions to enter a judgment in accordance with the findings herein, and it is so ordered.

The Supreme Court acknowledges the aid of Attorneys Harry G. Davis, Wm. B. Moore, and Malcolm E. Rosser in the preparation of this opinion. These attorneys constituted an advisory committee selected by the State Bar, appointed by the Judicial Council, and approved by the Supreme Court. After the analysis of law and facts was prepared by Mr. Davis and approved by Mr. Moore and Mr. Rosser, the cause was assigned to a Justice of this court for examination and report to the court. Thereafter, upon consideration, this opinion was adopted.

OSBORN, C. J., BAYLESS, V. C. J., and WELCH, PHELPS, and HURST, JJ., concur.