KICKBUSCH v. BAILEY et al.

No. 29527.   Jan. 28, 1941.

*109 P. 2d 812.*

---

Paul N. Buford, of Durant, for plaintiff in error.

Utterback & Utterback, of Durant, for defendants in error.

CORN, V. C. J.   This is an action for specific performance of a trust agreement, brought by Jessie Kickbusch, herein referred to as plaintiff, against Woodward Y. Bailey, administrator of the estate of Laurinda E. Pauline Bailey, deceased, herein referred to as defendant. Although an equity case, a jury was empaneled at the instance of the court to sit in an advisory capacity, and the jury rendered a verdict for the defendant, upon which the court rendered judgment accordingly. From this judgment the plaintiff appeals.

At the time of the execution of the trust agreement upon which the suit was brought, the above-named decedent was Laurinda Kickbusch, an unmarried daughter of the plaintiff, and was then living in the family home at Kalispell, Mont. The agreement is as follows:

"Certain disagreements have arisen between Jessie Kickbusch and her husband, W. E. Kickbusch, which disagreements relate to family affairs, and, whereas, the said parties are the owners of property, both personal and real estate, most of which has been derived as gifts from the parents of Jessie Kickbusch, and it is the intention of W. E.

Kickbusch and Jessie Kickbusch that such property shall be preserved for the use of the said Jessie Kickbusch and their children and in compliance with said arrangement the said W. E. Kickbusch and Jessie Kickbusch have on this day or prior hereto assigned and transferred to Laurinda Kickbusch, the eldest daughter of the said W. E. Kickbusch and Jessie Kickbusch, certain real estate located in the state of Idaho, 149 acres of which is known as the W. E. Kickbusch homestead, located in Bonner county, Idaho, together with certain other parcels of real estate not herein particularly described but all of which has been assigned to the undersigned for the purpose of carrying out the said agreement heretofore referred to, together with all notes, mortgages and stocks which have been transferred to me by the said W. E. Kickbusch and Jessie Kickbusch.

"Now, therefore, for the purpose of affecting the said agreement and for no other purpose, the undersigned, Laurinda Kickbusch, acknowledges and agrees that said conveyances of said property heretofore referred to have been and are made to the undersigned not as an absolute conveyance of title, but that the undersigned hereby agrees for value received, that she shall and does hold the title to said real estate and all said personal property so conveyed to her and which is now in her name (and other property which may hereafter be conveyed to her) solely as trustee for the said Jessie Kickbusch and her heirs so that said property may be preserved in its entirety for the use and support of the said Jessie Kickbusch and her children and for no other purpose. That as part of said agreement and to carry out the same and to authorize a proper disposition of the said property, the undersigned, Laurinda Kickbusch, agrees to execute and deliver to Jessie Kickbusch a general power of attorney, authorizing the said Jessie Kickbusch to sell and convey any and all said property conveyed to the undersigned, and further agrees that she will, upon demand, release and convey to the said Jessie Kickbusch or to such parties designated by her, all said real estate now held by her as such trustee.

"Dated July 25th, 1931.

"(Signed) Laurinda Kickbusch.

"Witnesses:

"(Signed) Allen A. French
"(Signed) Jean Zick."

Laurinda later went to San Antonio, Tex., where she was employed several months as a beautician, and there met her husband, Mr. W. Y. Bailey, and was married to him the day before she accepted and went to a position in New York, where she worked several months before returning to live with her husband at Durant, Okla.

Unfortunately, her death occurred within a short time after joining her husband at Durant. Mr. Bailey knew very little about her business affairs and nothing about the transactions in relation to the trust agreement. Her mother had no knowledge of her marriage until after her death. The marriage was what may be termed a secret marriage, at least insofar as her relatives were concerned. Her legal papers, including the two stock certificates in controversy, were in a lockbox in a bank in San Antonio, and were delivered to the administrator of her estate. The administrator also received cash from her bank account and savings account and in postal savings certificates in the aggregate sum of $903.75. This was admittedly her own property, and the same is not involved in this action. The real estate held under the trust agreement, being in Montana and Idaho and not within this jurisdiction, is not involved in this action either. Mention is made in the record that the plaintiff had recovered title to the real estate in an action brought in Montana. It is conceded that only the stock certificates are involved in this appeal.

This appeal is submitted upon several propositions of error, more or less formal, but the case may be determined upon plaintiff's first proposition: That the verdict and judgment are contrary to the law and the evidence.

After the introduction in evidence of the written trust agreement, the plaintiff gave testimony concerning the stock

certificates in question and explained the circumstances in connection with the transfer of them to her said daughter. The plaintiff also introduced in evidence the depositions of officers of the companies issuing the stock, both as to the issuance to the plaintiff and the transfer of the same to Laurinda. The transactions were properly identified as to certificate number, date and amount, both as to issuance and to transfer.

As to the evidence of the defendant, the court admitted incompetent and prejudicial evidence. Included in this was a finding and order of the county court, made upon a hearing of the plaintiff's claim against the estate for the trust property, which said finding and order showed they were based entirely upon the county judge's conjecture as to what Laurinda might testify if she were alive and could come into court. Other inadmissible evidence was offered by the defendant and received by the court, over the objection of the plaintiff. This consisted of the relation by witnesses of statements of Laurinda concerning what she would do when she recovered from her illness and could go back to Montana. These statements did not purport to assert or deny title to the property. The husband was permitted to relate conversations he had with his deceased wife purporting to relate to this property. All this was clearly inadmissible because it was hearsay. The defendant freely admitted that the only information he had concerning the title to this property was information stated to him by his wife in conversations, and his testimony showed that it was of the most general and indefinite character, and so ambiguous as to be as susceptible of establishing a trust as of establishing title in the deceased wife. The defendant was largely dependent upon obtaining his evidence from the plaintiff on cross-examination, and we find in the record no evidence which casts the slightest doubt upon plaintiff's title and ownership of the property.

This was an equity action, and the rendition of the judgment by the trial judge on the verdict of the jury, which at most was only advisory, made the judgment that of the trial judge sitting in equity. We must sustain this judgment unless it is clearly against the weight of the evidence. We are of the opinion it is clearly against the weight of the evidence. It is probable that the jury was led into error by the admission of the incompetent evidence. We think there is not sufficient evidence that plaintiff conveyed this property to her daughter to defraud plaintiff's creditors to justify declining plaintiff the aid of equity. We think she satisfactorily explained the purpose of the conveyance. The judgment cannot be permitted to stand.

The plaintiff proved her case by positive evidence, which stands uncontradicted and unimpeached by any competent evidence, and such evidence cannot be disregarded, but must control the decision of the court. 23 C. J. 12; General Exchange Ins. Corp. v. Edwards et al., 181 Okla. 288, 73 P. 2d 1145.

In the case of McDowell v. Droz, 179 Okla. 119, 64 P. 2d 1210, we held:

"In a case of equitable cognizance, the appellate court will examine and weigh the evidence and will reverse the judgment of the trial court if it appears that the same is against the clear weight of the evidence."

It is a well-established rule that in an action of purely equitable cognizance, this court will consider the entire record and weigh the evidence and cause to be rendered such judgment as the trial court should have rendered. City of Barnsdall v. Barnsdall Nat. Bank et al., 185 Okla. 228, 90 P. 2d 1057.

The judgment of the trial court is reversed and judgment is hereby rendered for the plaintiff.

RILEY, OSBORN, BAYLESS, and GIBSON, JJ., concur.